Ingraham, J.
The plaintiff in error was indicted for fating usury. The indebtedness arose upon a bond and mortgage; when the principal was due the debtor gave to Sumner an agreement in these words: “ If I do not pay N. Sumner the $800 I owe him by December 5,1857,1 will give him sixteen dollars extra, John Burdick, November 30, 1857.” A receipt for the money was endorsed on it. The plaintiff was convicted. Upon the trial, the judge submitted to the jury the . question whether money had been taken. This, of course, involved the inquiry whether the written agreement was intended as a cover for usury, and the jury have found that it was. With that ruling and the finding we cannot interfere. There was evidence submitted to the jury in addition' to the written agreement, from which the jury were to decide upon the intention of the parties, and the court rightfully refused to direct a verdict for the defendant. Whether the $16, was to be paid as a penalty for breach of a contract, or whether it was a cover for usury, could only be ascertained from the acts and admissions of parties. And the decision of the jury, if there were no errors in the instructions, would bind the parties. The judge was asked to charge the jury, that if the $16 was to be paid by Burdick on the happening of any contingency over which the said Burdick had control, it was not usury. This was refused. To constitute usury, there must be either a payment or an agreement by which *340 the party taking it is entitled to receive more than seven per cent. If the payment is conditional, and that condition is within.the power of the debtor to perform, so that the creditor may by the debtor’s act be deprived of any extra payment, it would not be usurious; This view was expressed by Paige, J.,*in Pomeroy v. Ainsworth (22 Barb. 124), where he says: “If the gain to the lender beyond the legal rate of interest is made dependent on the will of the borrower, as where he may discharge himself from it by payment of the principal, it is not usury.” And again: “If it was in the power of the party to discharge himself from the burden by repaying the amount of the advances, &c., it might be objected to the charge of usury that there was no certain gain beyond legal interest.” So it has been held that a bill payable in four instalments, with the interest added, and conditioned that the whole shall become due if default is made in one installment is not usurious, but a penalty. (Wells v. Girling, 5 Eng. Com. Law R. 733.) And if more than legal interest be reserved upon a contract for the loan of money, yet if it be a part of the agreement that the borrower may discharge himself from payment of any interest by repayment of the principal on a certain day, the case does not fall within the statute. (2 Hawk. P. C. b. 1, chap. 82; Floger v. Edwards, Cowp. 113; Morripet v. King, 2 Burr, 891; see also Ord on Usury, p. 48.)
I think the judge erred in refusing to so instruct the jury, and that the judgment should be reversed therefor. It is said, in the opinion delivered at the general term: “It is clear that the contract, on its face, was not usurious, and we should presume that the court charged the jury that upon its face it was not usurious; because such a charge would be correct.” I am at a loss to see upon what ground a court has a right to presume a judge charged correctly in the face of a refusal to charge what the law is conceded to be. On the contrary, where the judge refuges to charge *341 a plain proposition of law, the presumption is that he holds the law to be otherwise, and his refusal is based thereon.
The judgment should be reversed and the case remitted to the sessions for a new trial.
Denio, Ch. J.
Lord Mansfield is reported to have said that whenever it is in the power of a known borrower of money to pay the principal within a limited time without interest, upon non-payment the reservation of a larger sum than the statute allows is no usury. (Floger v. Edwards, Cowp. 112, 115.) He cites Hawkins P. C., chap. 82, § 119, which is to the same effect. The same doctrine is laid down in the older authorities, as in Ganet v. Foot (Comberback, 133), where Holt, Ch. J. held that “if I covenant to pay £100 a year hence, and if I do not pay it, to pay £20, it is not usury, but only in the nature of a nomine \poenoe." So in Roberts v. Venague (Cro. Jac. 517), one of the points stated as law by Doderidge, J., was this: “If I secure-both interest and principal, if it be at the will of the party who is to pay it, it is no usury; as if I lend to one £100 for two years, and to pay for the loan thereof £30, and if he pay the principal at the year’s end, he shall pay nothing for .interest, this is not usury, for the party hath his election, and may pay it at the year’s end, and so discharge himself.” And the point was expressly adjudged in Burton’s case (5 Rep. 68), where the agreement was that A. should lend B. one hundred pounds, and that B. should grant to A. and his heirs a rent of twenty pounds, in consideration that if B. should pay the one hundred pounds to A. on a certain day, which was before the day on which the rent was • appointed to be paid, then the rent should cease, it was held not to be usurious, “for it was in the election of the grantor to have paid the one hundred pounds, and to have frustrated the rent. So that the grantee (as the nature of usury is) was not assured of any *342 recompense for the forbearance of his one hundred pounds for a, year,, and the said rent of twenty pounds is but a penalty to the grantor and assurance to the grantee for the payment of the said one hundred pounds.” The same doctrine has been asserted and acted upon in more recent times. In Long v. Storie (10 Eng. Law and Eq. 182, A. D., 1852), usury was sought to be established in a security for a loan, from the circumstance that the money was not advanced until some time after the date of the instrument, which called for interest from that date at the rate of five per cent. But there was a provision in it by which the creditor agreed to receive interest at the rate of four per cent only if it was promptly paid. This reduction of interest, if the debtor availed himself of the provision, would more than countervail the excess which would have arisen out of the ante-dating of the instrument. And it was held, upon the dictum of Lord Mansfield, which I have referred to, that this was an answer to the imputation of usury, because the creditor, by making, punctual payment of the interest, would not have paid beyond five per centum pel annum. The same principle was affirmed and applied in the late supreme court of this state, in The Bank of Chenango v. Curtiss (19 John. 326), where some of the foregoing authorities were referred to as establishing the law as I have stated it;' and in the case of Cutler v. How (8 Mass. 259), the principle was applied to a contract which would have been plainly usurious but for an option reserved to the debtor to relieve himself from the usurious provision by paying in advance of the time fixed by the general terms of the agreement. But contracts of this character ought to be narrowly watched; for if the penalty was a mere contrivance to avoid the statute of usury, the arrangement will still be held usurious. This assertion was point edly inculcated in Burton’s case, above mentioned, where, although the contract was saved, it was resolved by the whole court that notwithstanding the privilege of redemp *343 tian reserved, if it had been agreed between the parties that the one hundred pounds should not be paid at the day, “ and the clause of redemption was inserted to make an evasion out of the statute, then it had been an usurious bargain and contract within the statute; for if, in truth, the contract be usurious against the statute, no color or show of words will save, but the party may show it, and shall not be concluded or estopped by any deed, or any other matter whatsoever; for the statute gives averment in such cases.” And Lord Mansfield thought it necessary to guard against an abuse of the principle laid down by him as above mentioned, by the memorable declaration so often quoted, that where the real truth is a loan (or forbearance) of money, and more than five per cent be taken, the will of man cannot find a shift to take it out of the statute. (Cowp. 114.) It must be borne in mind that if more than the statute rate be received or taken, the event of which is to operate as a diminution or extinguishment of the interest, must not be anything other than the absolute will of the debtor. This was laid down in Burton's case, and was adjudged in the case cited from Crohe, James, and is moreover the ground of the decision in Cleveland v. Loder (7 Paige, 557). Where, in such cases, the obligation to pay the excessive interest, is made to depend upon the happening of a collateral event, the principal must also depend upon the contingency. Where that is the case, the loan will not be usurious, unless the contingency is colorable and the agreement a cover for usury.
By the terms of the written agreement of Burdick, the usurious interest was not to be paid unless he should make default in the payment of the principal by the fifth day of December ensuing the making of the instrument. If that was a sincere and honest agreement, the undertaking was not usurious. But the day named was only five days from that on which the arrangement was made, and Bur-' -dick had, therefore, been unable to raise the considerable *344 sum which was to have been paid, and was applying for indulgence, and it does not appear that he had any expectation of raising the amount within the short period allowed by the writing. Hence there is pretty strong reason to believe that the sixteen dollars was paid to obtain a longer extension than the five days, and that this short period was inserted to give color to the agreement and to protect it from the imputation of usury. If the case has been properly put to the jury, the verdict, I think, must be considered quite satisfactory. Whether a particular contract, not usurious per se, is such on account of its being a cover, .for usury, upon the principles which have been stated, is generally a, question for the jury. The defendant was entitled to have them properly instructed in matter of law, and the single question before us is, whether that was done in the present case. The point was first taken by a request to the court to direct a verdict of acquittal for the reason that the sixteen dollars was taken on a contract for a penalty for the non-performance thereof, and not for a loan or forbearance of money. The instruction was refused, but, as the case states, the court decided that there was evidence sufficient to submit the case to the jury. The exception to this disposition of the request was not well taken. There was undoubtedly evidence enough to raise a question as to the real intention of the parties. It is apparent, I think, from this request and the ruling upon it, that' the idea of a colorable contract and á disguised arrangement for securing usury, was in the minds of the court and the counsel. It is inferable that the • opinion of the court was that upon the strict reading of the contract the sixteen dollars was inserted as a penalty, but that the jury had a right to determine whether the stipulation was sincere or colorable only. The next step was the general charge to the jury, which is not given. The defendant then prayed to have the jury instructed that if the sixteen dollars extra was paid to the defendant, on the happening of any *345 contingency over which the said Burdick had a control, it was not usury. The request was not happily expressed, but it, no doubt, referred to the rule of law which I have stated, and it is sufficient to indicate a desire to have that rule laid down. The defendant could legally claim to have it stated to the jury, with its necessary qualifications which I have .mentioned. If these qualifications were in the minds of the parties and the counsel, as it appears to me they were, the court could not properly state the principle without the necessary exception. Whether the whole subject had been properly explained in the charge which had been given, we cannot certainly know, but inasmuch as the court, in the- denial of the first request, had. stated that these were questions for the deliberation of the jury, it is fair to suppose that the real design of the arrangement constituted the matter which was to be left to them. I am, upon, the whole, of opinion that the request was too strict and absolute. It embraced only a part of the legal proposition which the case called for, and that,.,if it had been charged in the terms suggested by the request, would have been calculated to mislead the jury. If I am right in this, the judgment of the supreme court, affirming the determination at the sessions, ought to be affirmed.
Selden and Johnson, JJ., concurred with Denlo, Ch. J.
All the other judges being in favor of reversal, judgment reversed.